UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UDELL ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-4048 |
| | ) |
| DORRIE LOVE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Udell Rogers, proceeding *pro se* and out of custody, filed an action under 42 U.S.C. § 1983 against Defendants Dorrie Love, Chad Schuldt, Stanley Simonson, and Lloyd Sichling alleging that he was incarcerated beyond the term of his sentence because Defendants (1) refused to approve proposed placement on mandatory supervised release ("MSR") in violation of his Eighth Amendment right to be free from cruel and unusual punishment and (2) rejected his proposed host site and failed to investigate other sites in violation of the Fourteenth Amendment. (Doc. 14 at pp. 6-7). The Court limited Plaintiff's claims to the host site investigations and denials that occurred in 2020. *Id.* at p. 5.

Defendants filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D) (Doc. 39); Plaintiff filed a Response (Doc. 42); and Defendants filed a Reply (Doc. 45). For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

MATERIAL FACTS

**Host Site Investigation Process**

During the relevant time period, Plaintiff was an inmate in the Illinois Department of

1

Corrections ("IDOC") and incarcerated at Hill Correctional Center ("Hill").

On August 29, 2008, Plaintiff was sentenced to ten years for criminal sexual assault of a family member under eighteen years of age. The sentencing court ordered Plaintiff to serve 85% of his sentence and assigned Plaintiff an indeterminate MSR term of three years to life. Plaintiff's MSR term began on July 15, 2016. Plaintiff's physical release from the IDOC would be effective upon the approval of a viable host site.

Defendants provided a declaration from Defendant Lloyd Sichling explaining the process for investigating proposed host sites. (Doc. 39-3). Plaintiff was a type "S" (Special/Intensive Supervision) parolee because his underlying offense required him to be released in compliance with the Sex Offender Registration Act ("SORA"). Due to his heightened MSR conditions, Plaintiff's host site could only be approved by the IDOC's Parole Department. If an "S" type parolee does not have a viable approved host site at the beginning of his MSR term, then he is "violated at the door," which means he has not met the conditions of his parole requirements to be released from custody. (Doc. 39-3 at ¶ 11).

Plaintiff's parole conditions were dictated, in part, by SORA. First, Plaintiff was required to submit a proposed host site address, also known as a residence plan, to his Field Service Representative ("FSR"). Then, the FSR forwarded the address for the proposed host site to the Parole Department. Next, the Parole Department assigned a parole agent to investigate the proposed site and either approved or denied the site. During the investigation, the parole agent determined if the proposed site supported electronic monitoring and complied with state laws that limit the parolee's proximity to daycares, schools, the victim, the victim's family, parks, playgrounds, etc. Finally, the FSR informed the parolee about the approval or denial of the proposed site through the Cumulative Counseling Summary ("CHAMPS") system.

The FSR could refer the parolee to the Sex Offender Services Unit ("SOSU") or Placement Re-Entry Group ("PRG"), which have vendors who accept sex offenders as they search for viable host sites statewide. If an option became available from SOSU or PRG, the FSR provided the information to the parolee to decide if he would like to proceed with the placement. After a decision is made, SOSU or PRG would approve or deny the site.

**The Defendants**

*Dorrie Love*

Defendant Love was the Clinical Services Supervisor at Hill from March 1, 2014, to April 30, 2019. Defendant Love was not personally involved with the receipt of Plaintiff's proposed host sites in 2020, as she was no longer employed by Hill or the IDOC in 2020. (Doc. 39-5).

*Stanley Simonson*

Defendant Simonson was the Correctional Case Work Supervisor at Hill from approximately 2011 to July 2021. His job duties included supervising all the counselors at Hill, including the counselors who worked in the field services office. Defendant Simonson was not personally involved in approving or denying Plaintiff's host sites or forwarding Plaintiff's proposed addresses to the Parole Department and did not have the authority to approve or deny Plaintiff's proposed host sites.

Plaintiff testified he spoke with Defendant Simonson about his host site approvals or denials, but he does not remember when. (Doc. 39-1 at 36:4-5, 36:13-37:9). According to his declaration, Defendant Simonson does not recall speaking with Plaintiff. If Plaintiff spoke with him, Defendant Simonson would have advised Plaintiff to speak with his assigned FSR. (Doc. 39-6 at ¶ 12).

*Chad Schuldt*

Defendant Schuldt has served as the Clinical Services Supervisor at Hill since August 2019. Among other job duties, he serves as a coordinator and supervisor for various clinical service programs. Defendant Schuldt was not personally involved in approving or denying Plaintiff's host sites or forwarding Plaintiff's proposed addresses to the Parole Department. (Doc. 39-4). Plaintiff testified that he sued Defendant Schuldt because he held a supervisory position. (Doc. 39-1 at 32:18-33:7).

Plaintiff never spoke with Defendant Schuldt in person, but he claims that he wrote to him several times. *Id.* at 34:1-16, 35:10-11. Plaintiff believes he received a response from Defendant Schuldt, but Plaintiff does not have a copy of the responses. *Id.* at 25:7-26:8, 34:19-35:9. Defendant Schuldt does not recall receiving any correspondence from Plaintiff. (Doc. 39-4 at ¶ 19). As the Clinical Services Supervisor, Defendant Schult did not open or read all the mail directed to him as it was opened, organized, and disseminated to the appropriate counselor or FSR by an office administrator. If Defendant Schuldt corresponded with Plaintiff, it would have been noted in the CHAMPS system, but CHAMPS does not reflect any correspondence between Plaintiff and Defendant Schuldt in 2020.

*Lloyd Sichling*

Defendant Sichling was Plaintiff's assigned FSR from approximately January 1, 2020, to April 2020. (Doc. 39-3). Sherry Shultz, who is not named as a party, was Plaintiff's assigned FSR from April 1, 2020, until June 9, 2021.

According to Defendant Sichling, a FSR's duties include assisting inmates with making successful transitions from the corrections environment to the community, helping to develop and enhance inmates' skillsets, initiating pre-release procedures in accordance with Administrative

4

Directives, completing host site investigations on all regular release plans, ensuring appropriate information is entered in the Offender 360 program, and notifying the Parole Commander, the PRG, Interstate Compact, and the Transfer Coordinator, as applicable, of any changes that could affect an inmate's release status. *Id.* at ¶ 3.

A FSR cannot approve or deny a proposed host site for an individual on a Special/Intensive Supervision ("S") parole plan. As such, a FSR could not approve or deny Plaintiff's proposed host sites.

According to Defendant Sichling, Plaintiff did not submit any proposed host site addresses to him between January 2020 and April 2020. *Id.* at ¶ 20. If Plaintiff had submitted a proposed host site address, Defendant Sichling would have promptly sent the address to the Parole Department, and it would have been reflected in the residence plan. *Id.* at ¶ 21.

**Plaintiff's Proposed Host Sites**

On June 8, 2020, an address for Plaintiff's mother's home was submitted to the Parole Department. On June 27, 2020, parole agent Joseph Demauro denied the proposed site for being within 500 feet of a park. (Doc. 39-7).

On June 23, 2020, an address for Plaintiff's grandfather's home was submitted to the Parole Department. On June 29, 2020, parole agent Andre Jackson denied the proposed site because it was too close to a daycare. *Id.*

On July 2, 2020, Plaintiff received a "Parole Violation Report" from parole agent Candice Larson for failure to secure a host site that satisfied the MSR agreement. (Doc. 15 at pp. 23-24). Plaintiff was referred to SOSU and PRG to help assist with his placement. (Doc. 39-7). Plaintiff testified that he was informed and aware of his 2020 denials. (Doc. 39-1 at 44:14-49:5).

On October 6, 2020, Judge Kendall, via preliminary injunction, waived the "One Person

per Address" provision of 730 ILCS 5/3-3-7(a)(7.6) for certain members of the class in *Barnes, et al. v. Jeffreys* so that members of the class could transition back into the community at the New Day Apartments. (NDIL Case No. 20-cv-2137, Doc. 64).

On October 20, 2020, the IDOC received the Court Order and forwarded the address to the Parole Department. (Doc. 39-8 at p. 1). On November 5, 2020, parole agent Kenneth Rexford denied the proposed site because the host declined the Court's Order to place seven sex offenders at the same site. (Doc. 39-8).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

ANALYSIS

As an initial matter, Plaintiff failed to properly respond to Defendants' material facts in his Response. (Doc. 42). This Court's Local Rules provides that "[a] failure to respond to any numbered fact will be deemed an admission of the fact." CDIL-LR 7.1(D)(2)(b)(6). "The Seventh Circuit has repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment, even in the case of *pro se* plaintiffs." *Sokoya v. Downey*, No. 06-2219, 2009 WL 773523, at *3 (C.D. Ill. Mar. 20, 2009) (citing *Moralis v. Flageole*, No. 06 C 2034, 2007 WL 2893652, at *1 (C.D. Ill. Sept. 28, 2007); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). Given Plaintiff's failure to comply with the Local Rules, the Court deems Defendants' uncontested material facts admitted. However, to the extent Plaintiff asserts facts within his personal knowledge, the Court will consider those additional facts for purposes of this Order. *See* Fed. R. Evid. 602.

In their Motion for Summary Judgment, Defendants argue that (1) Plaintiff failed to properly exhaust his administrative remedies; (2) Plaintiff cannot establish direct, personal involvement by Defendants; and (3) Defendants are entitled to qualified immunity. (Doc. 39).

I. **Exhaustion of Administrative Remedies**

First, Defendants argue they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act. The Court directed Defendants to file a motion for summary judgment on the issue of exhaustion by October 21, 2022. (*See* d/e 9/6/2022). Defendants did not file a summary judgement motion addressing

exhaustion by the deadline, nor did they move for an extension of time under Federal Rule of Civil Procedure 6(b)(1)(B), which permits a court to extend deadlines after the time to act has expired if there is good cause and the party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see Bowman v. Korte*, 962 F.3d 995 (7th Cir. 2020) (finding that defendants did not demonstrate excusable neglect for failure to move for summary judgment before court-appointed deadline). Therefore, the Court declines to consider Defendants' arguments regarding exhaustion of administrative remedies.

## II. Plaintiff Failed to Establish Defendants' Direct, Personal Involvement

Defendants Sichling, Love, Simonson, and Schuldt assert that they had no personal involvement with refusing to approve Plaintiff's proposed placement on MSR or with failing to find him an alternative host site in 2020. *See Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) ("to be liable under § 1983, the individual defendant must have 'caused or participated in a constitutional deprivation.'").

### A. Defendant Love

Defendant Love asserts that she had no personal involvement in Plaintiff's claims because she was not employed at Hill during the relevant time period. At merit review, the Court limited Plaintiff's claims to 2020, because the denial of host sites in 2015 and 2018 were outside the two-year statute of limitations. (Doc. 14 at p. 5). Clearly, Defendant Love had no personal involvement with Plaintiff's host site approvals or denials in 2020 because her employment at Hill ended on April 30, 2019. As such, summary judgment is granted in favor of Defendant Love.

### B. Defendants Simonson and Schuldt

Defendants Simonson and Schuldt assert that they were not personally involved with Plaintiff's claims and cannot be held liable simply because they were supervisors.

The mere fact that a defendant is a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under § 1983. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). "A defendant 'will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Illinois State Police*, 251 F.3d 651, 652 (7th Cir. 2001)).

Defendant Simonson was the Correctional Case Work Supervisor at Hill from 2011 to July 2021. Plaintiff testified that he sued Defendant Simonson because he did not help facilitate Plaintiff's departure from the facility and did properly supervise Love, Schuldt, and Sichling. (Doc. 39-1 at 39:24-40:8). However, Defendant Simonson had no authority to facilitate Plaintiff's departure from the facility. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("no prisoner is entitled to insist that one employee do another's job").

Plaintiff alleges he had several brief conversations with Defendant Simonson where Plaintiff inquired whether his proposed host site was approved or not. Plaintiff does not specifically recall when these conversations occurred, but he believes that these conversations should have prompted Defendant Simonson to help find a suitable host site. According to his declaration, Defendant Simonson does not recall having any conversations with Plaintiff. (Doc. 39-6). If these conversations had occurred, Defendant Simonson would have advised Plaintiff to speak with his FSR. *Id.*

Defendant Schuldt is the current Clinical Services Supervisor at Hill and has held the position since August 2019. Plaintiff admits he never spoke with Defendant Schuldt, but he alleges that he wrote to him; however, there is no evidence that these letters were written or received. If

9

Defendant Schuldt communicated directly with Plaintiff or made a note about any correspondence from Plaintiff, it would have been noted in Plaintiff's CHAMPS records. Here, Plaintiff's CHAMPS records do not reflect that Defendant Schuldt received correspondence from Plaintiff in 2020.

Even if Plaintiff had produced evidence that he corresponded with Defendant Schuldt, as a matter of law, "letter writing to prison administrators, without more, cannot create liability under the Eighth Amendment." *See Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, at *10 (N.D. Ill. May 14, 2003) ("The fact that the plaintiff may have also written letters to I.D.O.C. administrators is insufficient to implicate them in the alleged violations…Even accepting as true that the plaintiff complained about his treatment at Stateville through letters and grievances, I.D.O.C. administrators cannot be expected to involve themselves with the minutiae of daily events in the lives of thousands of prisoners."); *see also Volk v. Coler*, 638 F. Supp. 1540, 1549 (C.D. Ill. 1986), *aff'd* 845 F.2d 1422 (7th Cir. 1988) (letters are insufficient to create personal involvement).

Plaintiff speculates that Defendant Simonson and Schuldt should have informed him about his host site approvals and denials and should have done more to help him find a host site, but Plaintiff offers no evidence, nor does the record show, that Defendants Simonson and Schuldt's acts or omissions led to any constitutional deprivation. Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003). Defendants Simonson and Schuldt are not liable based on their supervisory roles. As such, they are entitled to summary judgment.

### C. Defendant Sichling

Defendant Sichling was Plaintiff's FSR from January 1, 2020, until approximately April 1, 2020. Plaintiff claims that he submitted addresses for proposed host sites in 2020, but he does

10

not remember when. (Doc. 39-1 at 43:3-24). Plaintiff's residence plan reflects that he submitted addresses in June 2020, *after* Defendant Sichling was no longer serving as his FSR. Plaintiff submitted the addresses to FSR Sherry Schultz, who forwarded them to the Parole Department for review. Plaintiff does not allege or present any evidence that he submitted a host site address to Defendant Sichling that was not forwarded to the Parole Department.

Plaintiff alleges that Defendant Sichling failed to approve or deny his host sites, but only the parole agent, not the FSR, can approve or deny proposed sites after investigating the suitably.

Plaintiff has failed to establish that Defendants were personally involved in denying his proposed host sites while on MSR or had a duty to assist him in finding suitable housing for his release. *See Lucas v. Dep't of Corr.*, 2012 IL App (4th) 110004, ¶ 9 (Illinois law does not require that Defendants find a host site for an inmate on MSR). Therefore, the Court finds that Defendants are entitled to summary judgment on Plaintiff's Eighth and Fourteenth Amendment claims.

### III.    Qualified Immunity

The Court has found that Defendants' conduct did not violate Plaintiff's Eighth and Fourteenth Amendment rights. As a result, the Court need not address whether Defendants are entitled to qualified immunity. *Johns v. Tinsley*, No. 16-1106-JES, 2018 WL 10811472, at *5 (C.D. Ill. Mar. 7, 2018) (citing *Van den Bosch v. Raemisch*, 658 F.3d 778, 787 n. 9 (7th Cir. 2011)).

**IT IS THEREFORE ORDERED:**

(1)    Defendants' Motion for Summary Judgment [39] is GRANTED. Defendants Dorrie Love, Chad Schuldt, Stanley Simonson, and Lloyd Sichling are DISMISSED WITH PREJUDICE. Plaintiff takes nothing. The Clerk is directed to enter judgment and close this case.

(2) Plaintiff remains responsible for paying the remainder of the $350 filing fee even though his case has been dismissed. (See d/e 3/23/2021).

(3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

(4) To proceed *in forma pauperis* on appeal, Plaintiff must file a motion to proceed on appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (An appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal.

ENTERED:    1/24/2024

s/ James E. Shadid
James E. Shadid
United States District Judge